IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

ALLEN RUIZ and BRYAN RUIZ,    *
                              *
    Plaintiffs,               *
                              *
        v.                    *          CV 622-058
                              *
ALLISON B. MARGOLIN, a        *
professional law corporation  *
d/b/a Margolin and Lawrence,  *
and ALLISON B. MARGOLIN,      *
individually,                 *
                              *
    Defendants.               *

ORDER

Before the Court is Defendants' motion to dismiss and compel arbitration. (Doc. 6.) For the following reasons, Defendants' motion is **GRANTED**.

I. BACKGROUND

Plaintiffs originally filed suit against Defendants in the Superior Court of Candler County, Georgia on June 16, 2022. (Doc. 1-1, at 3.) Defendants removed the case to this Court on August 5, 2022 pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (Doc. 1, at 1.) The Complaint brings two claims against Defendants: breach of oral contract and fraud in the inducement. (Doc. 1-1, at 5, 7.) The Complaint alleges[1] that Plaintiff owns real estate farm

---

[1] In deciding a motion to dismiss, the Court accepts all facts alleged in the Complaint as true and construes all reasonable inferences in the light most

property in Candler County, Georgia and hired Defendant Allison B. Margolin to perform legal services, specifically to obtain a hemp license for cultivation of Plaintiffs' farm.[2] (Id. at 3.) Defendant Margolin is a licensed attorney in California, and her corporation entered into an agreement with Plaintiff Bryan Ruiz to obtain a hemp grower, processors license, and permit in Georgia. (Id. at 4.) Defendant Margolin acted on behalf of her corporation, and she traveled to Candler County, Georgia to meet with Plaintiffs at the ranch in July 2018. (Id.) In a letter to Plaintiff, Defendant Margolin alleges she contacted a Georgia company for him, contacted and corresponded with the Georgia Department of Agriculture for purposes of hemp cultivation and for purposes of obtaining a hemp license, had extensive conversations with Georgia residents regarding investment opportunities for Plaintiff, and was in contact with a Georgia lobbyist for assistance in their work. (Id. at 4-5.) Plaintiffs allege that based on these facts, Defendant Margolin conducted business in Georgia. (Id. at 5.)

Plaintiffs' Complaint asserts two claims, first alleging the Parties entered into a verbal agreement where Defendant Margolin agreed to obtain a Georgia hemp license for Plaintiffs, but then she breached the oral contract when she failed to deliver on the promise. (Id. at 5-6.) Plaintiffs then allege Defendant Margolin

---

favorable to Plaintiffs. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002).

[2] Throughout the Complaint, Plaintiff (singular) and Plaintiffs (plural) are both used, and the Court is unable to deduce a distinction as to when one is used versus the other. Therefore, the Court will simply mirror Plaintiffs' usage for purposes of the factual recitation.

2

knew, or recklessly misrepresented, a false statement about obtaining a hemp license and fraudulently induced Plaintiffs into the oral contract. (Id. at 7-9.) Defendants move to dismiss the Complaint and to compel arbitration. (Doc. 6.)

First, Defendants move to compel arbitration under the terms of the engagement agreement between the Parties. (Id. at 1.) Next, Defendant Allison B. Margolin, a professional law corporation ("PLC"), moves to dismiss because it did not exist at the time of the contract for legal services, and it was not retained by Plaintiffs. (Id.) And finally, Allision B. Margolin, PLC, moves to dismiss because it lacks the minimum contacts necessary for a Georgia court to exercise jurisdiction over it. (Id. at 1-2.) The Court will address each of the arguments below.

## II. MOTION TO COMPEL ARBITRATION

The Court first turns to Defendants' motion as it seeks to compel arbitration. (Id. at 6-11.) Plaintiffs argue the Parties did not have mutual assent, did not enter into the June 10, 2019 engagement letter (the "Retainer Agreement", Doc. 6-1, at 6-14) sent by Defendants, and therefore they did not agree to the arbitration clause contained therein. (Doc. 15, at 8-10.) As a preliminary matter, the Court notes that the Retainer Agreement, engagement letter, and emails surrounding the Parties' discussions and negotiations were not all attached to the original Complaint. Nonetheless, they are central to the allegations, Defendants

3

attached them to the motion to dismiss, and the documents are both undisputed and central to Plaintiff's Complaint. (See Doc. 6-1, at 4-14; Doc. 15, at 17-18, 25-35, 36-39.)

> The district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint . . . [however,] the court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed.

Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005) (citations omitted). The relevant documents here are undisputed and central to the Complaint; therefore, the Court will consider them in its analysis and will not convert the motion into one for summary judgment. The Court now turns to the Parties' arguments.

### A. Legal Standard

The Federal Arbitration Act ("FAA") "embodies a liberal federal policy favoring arbitration agreements." Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005) (internal quotations and citations omitted). The FAA requires courts to "rigorously enforce agreements to arbitrate." Davis v. Prudential Sec., Inc., 59 F.3d 1186, 1192 (11th Cir. 1995) (quoting Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987)). The Supreme Court has "made clear that the strong federal preference for arbitration of disputes expressed by Congress in the [FAA] must be enforced when possible." Musnick v. King Motor Co. of Fort Lauderdale, 325 F.3d 1255, 1258 (11th Cir. 2003). Further, the Supreme Court found "the FAA applies to all

arbitration agreements involving interstate commerce." Id. at 1258 n.2 (citing Cir. City Stores, Inc. v. Adams, 532 U.S. 105 (2001)).

"[T]he party seeking to compel arbitration has the initial burden of producing the arbitration agreement and establishing the contractual relationship necessary to implicate the FAA and its provisions granting [the court] authority to dismiss or stay [plaintiffs'] cause of action and to compel arbitration." Compere v. Nusret Miami, LLC, 396 F. Supp. 3d 1194, 1199 (S.D. Fla. 2019) (citation and internal quotation marks omitted). If the party for arbitration meets its burden of production, the burden shifts to the party opposing arbitration to show why the court should not compel arbitration. Bhim v. Rent-A-Ctr., Inc., 655 F. Supp. 2d 1307, 1311 (S.D. Fla. 2009).

B. Discussion

The Court has subject matter jurisdiction over this dispute through diversity jurisdiction. 28 U.S.C. § 1332.[3] The amount in controversy is $75,000 and the Parties are completely diverse. The Court now analyzes whether the Parties entered into an enforceable contract, and if so, whether that contract contained an enforceable arbitration provision.

---

[3] The FAA "does not confer subject matter jurisdiction nor does it create independent federal question jurisdiction." Sunpoint Sec., Inc. v. Porta, 192 F.R.D. 716, 718 (M.D. Fla. 2000) (citation omitted). Therefore, "[i]ndependent grounds for subject matter jurisdiction must be demonstrated." Id.

5

1. <u>Enforceable Contract</u>

Plaintiffs allege the Parties only entered into an oral contract memorialized by a May 16, 2019 email. (Doc. 1-1, at 5.) However, Defendants argue Defendant Margolin and Plaintiff Bryan Ruiz entered into an agreement memorialized in a written document emailed to Plaintiff Bryan Ruiz on June 10, 2019. (Doc. 6, at 3.) Plaintiff Bryan Ruiz argues there was no mutual assent in the agreement, as the scope of services did not commit to the processing of two licenses, and a lack of mutual assent prevents a valid contract from being formed. (Doc. 15, at 2-6.)

"Although the validity of an arbitration agreement is generally governed by the FAA, state law generally governs whether an enforceable contract or agreement to arbitrate exists." <u>Gates v. TF Final Mile, LLC</u>, No. 1:16-CV-0341, 2020 WL 2026987, at *5 (N.D. Ga. Apr. 27, 2020) (citing <u>Caley</u>, 428 F.3d at 1367-69). "Georgia law requires four foundational elements for the formation of a valid contract: (1) parties able to contract, (2) consideration, (3) definitive subject matter, and (4) the assent of the parties to the terms of the contract." <u>APAC-Southeast, Inc. v. Coastal Caisson Corp.</u>, 514 F. Supp. 2d 1373, 1380 (N.D. Ga. 2007) (citations and quotation marks omitted). There is no dispute the Parties were able to contract, and the definitive subject matter was legal services to assist Plaintiffs with a hemp production business in the state of Georgia. The issues the Court must examine with regards to the Parties' alleged contract is the

6

consideration and assent of the Parties to the terms of the contract.

As explained above, Plaintiffs allege there was only an oral contract, and that it was memorialized in a May 16, 2019 email. (Doc. 1-1, at 5-6.) While the Court accepts Plaintiffs' allegations as true and must draw all reasonable inferences in their favor at the motion to dismiss stage, the Court does not have to accept as true allegations that are clearly refuted by materials directly relied on by the Parties in making their arguments. Here, Plaintiffs characterize the May 16, 2019 email as memorializing their oral contract, however the email they cite for this contentions explicitly states it is a proposal and that "[i]f all looks good [Defendant Margolin will] email [Plaintiff] a retainer agreement for the 75k and wiring instructions." (Doc. 1-1, at 11.) Based on this alone, the plain language of the email proves it was not meant to be the operative contract, but rather, the Retainer Agreement Defendant Margolin emailed on June 10, 2019 that incorporated the terms from the emailed proposal was meant to be the operative contract. (See Doc. 6-1, at 6-14.)

Nevertheless, Plaintiffs raise a couple of issues with the Retainer Agreement being a valid contract. (See Doc. 15, at 4-6, 9-11.) First, they argue a lack of mutual assent because the scope of the Retainer Agreement needed to be edited to include the medical license in addition to the hemp license, and they had asked Defendant Margolin to do so. (Id. at 5.) The Parties discussed

7

the edits, and after receiving the Retainer Agreement, Plaintiff Bryan Ruiz wired Defendant Margolin the $75,000, Defendant Margolin confirmed she received it, and Defendant Margolin told Plaintiff Bryan Ruiz she would send a revised agreement; however, she never did so. (See id. at 39.) Plaintiffs argue the text message exchange illustrates the lack of mutual assent between the Parties. (Id. at 10.) They also argue the Retainer Agreement was not signed by either Party. (Id.) Finally, Plaintiffs assert all inferences and doubts must be resolved in their favor, it is irrefutable that neither Party agreed to the June 10, 2019 Retainer Agreement and arbitration clause, especially Plaintiffs, and Defendant Margolin cannot meet her burden of proof. (Id. at 10-11.) The Court addresses whether there was valid consideration and an assent of the Parties to the terms of the Retainer Agreement.

"Mutual promises to perform are sufficient consideration to support a contract in Georgia." Dibrell Bros. Int'l S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1583 (11th Cir. 1994) (citations omitted); see also West v. Bowser, 878 S.E.2d 56, 58 (Ga. Ct. App. 2022) ("Under Georgia law, mutual promises and obligations are sufficient consideration to support a contract." (citations omitted)). Plaintiffs argue they did not sign the Retainer Agreement[4] and that a condition of the offer was that they

---

[4] Plaintiffs refer to the Retainer Agreement as the "Engagement Letter & Scope of Services" which is written at the beginning of the aforementioned agreement.

8

sign the letter. (Doc. 15, at 6.) They argue the Retainer Agreement "was merely a proposal subject to review as the parties continued to negotiate" and that "[n]o agreement was formed." (Id.) In opposition, Defendants argue that although the Retainer Agreement was not signed, the terms were consented to by Plaintiff Bryan Ruiz through his payment of the $75,000 he wired to Defendant Margolin the day after receiving the Retainer Agreement. (Doc. 6, at 15.) Furthermore, Defendants argue each party provided mutual consideration - payment by Plaintiff Bryan Ruiz and legal services by Defendant Margolin. (Id. at 10.)

Under Georgia law, "the mere fact that a contract contains signature blocks does not mean that signature is required to make the contract effective. Georgia law has long recognized that assent to the terms of a contract may be given other than by signatures." Cobra Tactical, Inc. v. Payment All. Int'l Inc., 315 F. Supp. 3d 1342, 1347 (N.D. Ga. 2018) (alterations adopts and citations and quotation marks omitted); see also Burson v. Milton Hall Surgical Assocs., LLC, 806 S.E.2d 239, 246 ("Assent to the terms of a contract may be given other than by signatures. . . . If one of the parties has not signed, his acceptance is inferred from a performance under the contract, in part or in full, and he becomes bound." (citation omitted)). Here, the Retainer Agreement contained a promise to provide legal services in exchange for a

---

(Doc. 15, at 6.) For the sake of clarity, the Court will refer to this document as the Retainer Agreement throughout this Order.

9

$75,000 payment, and so the Court finds on its face, the Retainer Agreement contained mutual promises, and therefore sufficient consideration. Furthermore, Plaintiff Bryan Ruiz wired Defendant Margolin the $75,000 after receiving the Retainer Agreement, and Defendant Margolin provided legal services in exchange for the payment. Thus, the Court finds the requirement of consideration was satisfied. The Court now turns to the mutual assent of the Parties, which Plaintiffs argue was not given despite Plaintiff Bryan Ruiz's payment of the retainer due to the fact the scope of services in the Retainer Agreement did not include both the hemp and the medical license. (See Doc. 15, at 5.)

The only term of the Retainer Agreement Plaintiffs explicitly assert they did not assent to is the scope of services; however, Plaintiffs do also argue they did not agree to the arbitration provision simply because they did not have mutual assent in the underlying contract, thereby negating the arbitration provision as well. (Id. at 5, 10-11.) Plaintiffs rely on the Parties' text message exchange, in which Plaintiff Bryan Ruiz told Defendant Margolin the Retainer Agreement needed to be amended to include the medical license as well as the hemp license, to show the lack of mutual assent. (Id. at 10.) Defendants argue that while Plaintiff Bryan Ruiz requested the one enumerated amendment, to which Defendant Margolin agreed, he did not object to anything else within the agreement, including the mandatory arbitration clause. (Doc. 20, at 3.)

In determining mutual assent, courts apply an objective theory where a party's intention is deemed to be what a reasonable man in the position of the *other* contracting party would ascribe to the first party's manifestations of assent. See Legg v. Stovall Tire & Marine, Inc., 538 S.E.2d 489, 491 (Ga. Ct. App. 2000); see also Terry Hunt Const. Co. v. AON Risk Servs., Inc., 613 S.E.2d 165, 169 (Ga. Ct. App. 2005). "A contract is not complete and enforceable until there is a meeting of the minds as to all essential terms." Clark v. Schwartz, 436 S.E.2d 759, 760 (Ga. Ct. App. 1993) (citing O.C.G.A. § 13-3-2). However, "the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement." Terry Hunt, 613 S.E.2d at 169. And, as outlined above, "assent to the terms of a contract may be given other than by signatures." Id. (citation and quotation marks omitted and alterations adopted). Plaintiff Bryan Ruiz argues there was no mutual assent because the scope of services omitted the medical license; however, there is no allegation the Parties did not agree on the scope of the services after discussion, it was just incorrect within the Retainer Agreement. When viewing the correspondence and discussions between Plaintiff Bryan Ruiz and Defendant Margolin in which he requests the language be updated, she obliges and says she will send over an updated version, indicating the Parties did in fact agree on the scope of services

11

even if incorrectly listed in the Retainer Agreement. (See Doc. 15, at 5, 37-39.)

Furthermore, the Retainer Agreement itself contains unambiguous language that provides: "Please refer to the attached Scope of Services for a description of the legal services we will be providing to you. If additional services are requested by you and agreed to by us, this letter will apply to such services, unless superseded by another written agreement." (Doc. 6-1, at 6.) Therefore, as a matter of basic contract interpretation, even though Plaintiff Bryan Ruiz requested the scope of services attachment be updated to include two licenses, the terms of the actual Retainer Agreement were to stay in full force and effect unless superseded. (See id.) Therefore, based on this language, and the Court's finding that the Parties had a meeting of the minds and concurred on the terms of the contract, the Court finds the Parties entered a valid contract as represented in the Retainer Agreement. Therefore, the Court turns to the arbitration provision.

### 2. Arbitration Provision

The Retainer Agreement contains a section titled "Arbitration of Disputes" (the "Arbitration Provision"), which includes the following relevant language:

> Any controversy or claim, whether in tort, contract or otherwise, arising out of or relating to the relationship between Client, its affiliates or successors . . . and Margolin & Lawrence, its affiliated partnerships, attorneys or staff or any of their

>successors . . . or the services provided or the fees charged . . . pursuant to this [Retainer Agreement] or otherwise . . . shall be submitted to binding arbitration.

(Id. at 10.) Since Defendant Margolin produced the Arbitration Provision and established the contractual relationship necessary to implicate the FAA, the burden has shifted to Plaintiffs to show why the court should not compel arbitration. See Bhim, 655 F. Supp. 2d at 1311.

The FAA applies to agreements "evidencing a transaction involving commerce." 9 U.S.C. § 2. The Supreme Court has construed this language broadly, holding that the "involving commerce" language in Section 2 must be read to extend the FAA's reach to the limits of Congress's Commerce Clause Power. Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 268, 277 (1995). Here, the Retainer Agreement, an agreement for the performance of legal services, certainly involved interstate commerce, especially considering Plaintiff Bryan Ruiz was engaging in business in Georgia and Defendant Margolin was in California; thus, it is governed by the FAA. The Court then turns to address whether the Arbitration Provision encompasses the suit at issue.

a. *Enforceability of Arbitration Provision*

"Whether an arbitration agreement exists is settled by state-law principles of contract law." Hefter v. Charlie, Inc., No. 2:16-cv-1805, 2017 WL 4155101, at *5 (N.D. Ala. Sept. 19, 2017) (quoting Hanover Ins. Co. v. Atlantis Drywall & Framing LLC, 611

13

F. App'x 585, 588 (11th Cir. 2015)). The Court already determined there was mutual assent between the Parties and a valid contract made in the Retainer Agreement. (See Doc. 15, at 9.) Since the Retainer Agreement is a valid contract, the Arbitration Provision within it is enforceable, and the Court turns to whether it applies to Plaintiffs' claims.

b. *Applicability of Arbitration Provision*

"The FAA creates a presumption in favor of arbitrability," so any doubts concerning the scope of arbitral issues must be construed in favor of arbitration. Paladino v. Avnet Comput. Techs., Inc., 134 F.3d 1054, 1057 (11th Cir. 1998). The Eleventh Circuit has further held that if parties intend to exclude categories of claims from their arbitration agreement, they must clearly express such intent. Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1222 (11th Cir. 2000). In other words, issues will be deemed arbitrable unless it is clear that the arbitration agreement intentionally omits them. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 945 (1995).

Here, the Parties agreed to arbitrate "[a]ny controversy or claim . . . arising out of or relating to [their] relationship." (Doc. 6-1, at 10.) The language in the Arbitration Provision is unambiguous and Plaintiffs provide no argument that their currently pending claims fall outside the scope of the Arbitration

Provision. Therefore, the Court finds Plaintiffs' claims are subject to mandatory arbitration.[5]

## C. Status Pending Arbitration

Defendants move the Court to not only compel arbitration, but also to dismiss the case. (See Doc. 6, at 11.) Section 3 of the FAA provides that once a district court is "satisfied that the issue[s] involved in [a] suit . . . [are] referable to arbitration," the district court "shall on application of one of the parties stay the trial of the action" until the arbitration is complete. 9 U.S.C. § 3. A stay is not required, then, without a request for one because Section 3's stay requirement is triggered "on application of one of the parties." See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Wise Alloys, LLC, 807 F.3d 1258, 1268 (11th Cir. 2015) ("[S]ection 3 qualifies the mandatory nature of any stay it authorizes by requiring a party to apply for the stay." (alterations and citations omitted).); see also McGhee v. Mariner Fin., LLC, No. 1:19-CV-934, 2019 WL 5491825, at *6-7 (N.D. Ga. Aug. 7, 2019) (dismissing case because no party requested a stay). Because no stay was requested by the Parties, the Court finds dismissal of the case proper and therefore will not address Defendants' additional arguments for dismissal.

---

[5] The Court notes that the Retainer Agreement only lists Plaintiff Bryan Ruiz as a client, not Plaintiff Allen Ruiz; nevertheless, Plaintiffs' alleged claims both arise under the scope of the Retainer Agreement and thus fall subject to the Arbitration Provision. (See Doc. 6-1, at 6; Doc. 1-1, at 3-9.)

15

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss and compel arbitration (Doc. 6) is **GRANTED**. **IT IS HEREBY ORDERED** that Plaintiffs and Defendants **SHALL ARBITRATE** all claims raised in this dispute and this case is **DISMISSED WITHOUT PREJUDICE**. The Court **DIRECTS** the Clerk to **TERMINATE** all motions and deadlines and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 21st day of March, 2023.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA